IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

8.07CV 661-T 17 EAJ

KENNETH A. HENDRICKS
DIANE M. HENDRICKS, &
AMFINITY CAPITAL, LLC,

    Plaintiffs,

                                                Case No.

v.

MIRABILIS VENTURES, INC.,
PRESIDION CORPORATION,
PRESIDION SOLUTIONS, INC.,
CRAIG A. VANDERBURG,
JAMES E. BAIERS, and
JOHN W. BURCHAM, II,

    Defendants.
_____/

## COMPLAINT

Plaintiffs Kenneth A. Hendricks, Diane M. Hendricks (collectively the *"Hendricks"*) and Amfinity Capital, LLC (*"AmCap"*) complain of Mirabilis Ventures, Inc. (*"Mirabilis"*), Presidion Corporation (*"Presidion"*), Presidion Solutions, Inc. (formerly Affinity Business Services, Inc., and herein *"PSI"*), Craig A. Vanderburg (*"Vanderburg"*), James E. Baiers (*"Baiers"*), and John W. Burcham, II (*"Burcham"*) as follows:

### THE PARTIES

1.    AmCap is a limited liability company formed in the State of Delaware and headquartered in Beloit, Wisconsin.

2.    The Hendricks are residents of the State of Wisconsin.

3.      Mirabilis is a corporation incorporated in the State of Nevada, headquartered in Nevada, and doing business in the State of Florida.

4.      Presidion is a corporation incorporated in the State of Florida, headquartered in Troy, Michigan, and doing business in the State of Florida.

5.      PSI is a corporation incorporated in the State of Florida, headquartered in Hollywood, Florida, and doing business in the State of Florida.

6.      Vanderburg is a resident of the State of Michigan who engaged in the hereinafter described activities in the State of Florida.

7.      Baiers is a resident of the State of Michigan who engaged in the hereinafter described activities in the State of Florida.

8.      Burcham is a resident of the State of Michigan who engaged in the hereinafter described activities in the State of Florida.

### JURISDICTION & VENUE

9.      Jurisdiction exists pursuant to 28 U.S.C. §1391(a)(1) by virtue of diversity of citizenship.  Further, the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

10.     Venue is properly before this Court pursuant to 28 U.S.C. §1391(a)(2) because all or part of the parties' agreements were negotiated, executed or delivered in the State of Florida; the parties' agreements state that jurisdiction shall be with any court having jurisdiction over persons and property located in Orange County, Florida or Pinellas County, Florida; and a substantial part of the events or omissions on which the claim is based occurred in the State of Florida.

### FACTS COMMON TO ALL COUNTS

11.     In January 2002, PSI acquired from the Hendricks (and other shareholders) all stock of Amfinity Business Solutions, Inc., now known as ABC IV, Inc., ("*ABS*") for $3.5 million (less a "net worth adjustment" described therein) and various stock options.[1]  PSI paid $400,000 of the purchase price at closing and the

---

[1] See Complaint Exhibit 1.

remainder was to be paid pursuant to a promissory note ("*2002 Note*").[2] The 2002 Note was secured by a security interest in the assets of ABS and its wholly owned subsidiaries, Amfinity H.R. Solutions, Inc., now known as Paradyme, Inc.,("*Paradyme*"), and Paradyme National Insurance Brokers, Inc. ("*Paradyme Brokers*"). Subsequently, AmCap assigned its rights in the 2002 Note and the related security interests to the Hendricks.

12.    Plaintiffs exercised the foregoing stock option, and other stock options, and, in conjunction with various other agreements, ultimately acquired 10,135,549 shares of Presidion Common Stock (the "*Stock*").

13.    The 2002 Note and subsequent credit extended by the Hendricks were personally guaranteed by defendants Vanderburg, Baiers and Burcham (the "*Guarantors*").[3]

14.    Effective April 30, 2002, the parties executed a Settlement Agreement and Release (the "*2002 Settlement*") to resolve a dispute among them.

15.    Pursuant to the 2002 Settlement, PSI executed a Replacement Promissory Note that the Guarantors guaranteed.[4] The Replacement Promissory Note required full payment of all sums due by January 15, 2003. PSI and the Guarantors breached the Replacement Promissory Note by failing to timely or fully pay all sums due.

16.    Effective January 15, 2003, the parties executed a Settlement Agreement and Release (the "*January 2003 Settlement*") to resolve disputes among them.

17.    Pursuant to the January 2003 Settlement, PSI executed a Second Replacement Promissory Note that the Guarantors guaranteed. The Second Replacement Promissory Note ("*2nd Note*") required full payment of all sums due by April 15, 2003.

---

[2] Complaint Exhibit 2.

[3] Complaint Exhibit 3, Burcham Unlimited Continuing Guaranty Agreement ("***Burcham 2002 Guaranty***"); Complaint Exhibit 4, Vanderburg Unlimited Continuing Guaranty Agreement ("***Vanderburg 2002 Guaranty***"); Complaint Exhibit 5, Baiers Unlimited Continuing Guaranty Agreement ("***Baiers 2002 Guaranty***")

[4] *See* Exhibits 4, 5 & 6 wherein Guarantors guaranteed payment of future credit extensions to PSI.

PSI and the Guarantors breached the 2nd Note by failing to timely or fully pay all sums due.

18.     In or about February 2003, MediaBus Networks, Inc. (now Presidion via a name change) acquired 100% of PSI's outstanding common stock.

19.     Effective April 15, 2003, the parties resolved a dispute by execution of a Release and Settlement Agreement (the "*April 2003 Settlement* ") that was executed by PSI, Presidion, Paradyme, Paradyme Brokers, the Guarantors, and others, on the one hand, and AmCap, the Hendricks, and others, on the other hand.

20.     Effective April 15, 2003, PSI executed a Third Replacement Promissory Note ("*3rd Note*")[5] that was guaranteed by the Guarantors. The 3rd Note required monthly payments and payment in full by April 15, 2004.  PSI and the Guarantors breached the 3rd Note by failing to timely or fully pay all sums due.

21.     The April 2003 Settlement required Presidion to cause a Letter of Credit to be issued for the Hendricks' benefit by Strategic Capital Investments, d/b/a Strategic Bancorp ("*Strategic*"), in the amount of $2,673,000.  Presidion procured the Letter of Credit but Strategic refused, without valid or just cause, to pay the Hendricks after proper demand for payment.

22.     On or about May 14, 2004, the Hendricks notified Presidion that Presidion was in default under the 3rd Note because Presidion (1) breached various Stock Registration Rights Agreements by failing to properly and timely file Hendricks' Stock registration statement, (2) defaulted on Comerica loan agreements, (3) breached its agreements with Mercator Advisory Group and/or its subsidiaries and affiliates, (4) impaired its ability to pay on the note, (5) became insolvent, and (6) failed to deposit various amounts into escrow for the benefit of plaintiffs and others.

23.     On or about June 9, 2004, the parties entered into a Forbearance Agreement (the "*1st FA*") wherein AmCap, the Hendricks and others agreed to refrain from exercising their rights under the parties' prior notes and agreements if certain conditions were met.  Pursuant to the 1st FA, the defendants (Mirabilis excepted) agreed

---

[5] Complaint Exhibit 6.

to, among other things, (1) immediately pay all past accrued interest, (2) pay AmCap $45,000, and (3) pay all note amounts due by July 15, 2004.

24. On or about September 28, 2004, the Hendricks notified Presidion, Vanderburg and Baiers that Presidion was in default of note obligations and that the Hendricks intended to draw down on their Letter of Credit.

25. In early October 2004, the parties entered into a Second Forbearance Agreement (the "2nd FA") wherein the Hendricks agreed to refrain from exercising their debt collection rights under the parties' prior notes and agreements until after October 13, 2004 if certain conditions were met. In the 2nd FA, the defendants (Mirabilis excepted) acknowledged that, among other things, the principal debt to the Hendricks was $2,672,662.88, accumulated interest was $39,248.22, the Hendricks had properly accelerated the indebtedness, that obligors have no defenses to or offset against the indebtedness, and that the Hendricks demand for payment in full of the indebtedness was timely and proper.

26. On or about October 28, 2004, the Hendricks sent Strategic an original executed sight draft ("Sight Draft") to draw on the Letter of Credit. Strategic received the Sight Draft on or about October 29, 2004 but refused to pay on the Letter of Credit. Strategic is a bogus entity that lacked the financial resources to pay on the Letter of Credit. The Hendricks thereafter sued Strategic in the United States District Court for the Central District of California.

27. On or about January 7, 2005, the parties entered into a Third Forbearance Agreement ("3rd FA") wherein the Hendricks agreed to refrain from exercising their debt collection rights under the parties' prior notes and agreements until after January 26, 2005 if certain conditions were met. In the 3rd FA, the defendants (Mirabilis excepted) acknowledged that, among other things, the principal debt to the Hendricks was $2,672,662.88, accumulated interest was $80,399.83, the Hendricks had properly accelerated the indebtedness, that obligors have no defenses to or offset against the indebtedness, and that the Hendricks demand for payment in full of the indebtedness was timely and proper.

28.     On or about February 9, 2005, the parties entered into a Fourth Forbearance Agreement ("4th FA") wherein the Hendricks agreed to refrain from exercising their debt collection rights under the parties' prior notes and agreements until after February 14, 2005 if certain conditions were met.  In the 4th FA, the defendants (Mirabilis excepted) acknowledged that, among other things, the principal debt to the Hendricks was $2,672,662.88, the Hendricks had properly accelerated the indebtedness, that obligors have no defenses to or offset against the indebtedness, and that the Hendricks demand for payment in full of the indebtedness was timely and proper.

29.     On or about February 24, 2005, the parties entered into a Fifth Forbearance Agreement ("5th FA") wherein the Hendricks agreed to refrain from exercising their debt collection rights under the parties' prior notes and agreements until after March 31, 2005 if certain conditions were met.  In the 5th FA, the defendants (Mirabilis excepted) acknowledged that, among other things, the principal debt to the Hendricks was $2,672,662.88, accumulated interest as of February 14, 2005 was zero, interest on indebtedness was eighteen percent  (18%) per annum, the Hendricks had properly accelerated the indebtedness, that obligors have no defenses to or offset against the indebtedness, and that the Hendricks demand for payment in full of the indebtedness was timely and proper.

30.     The defendants (Mirabilis excepted) breached and otherwise failed to fulfill their 1st FA, 2nd FA, 3rd FA, 4th FA and 5th FA duties and obligations.

31.     On or about February 16, 2006, the Hendricks and Mirabilis Ventures, Inc. ("*Mirabilis*") entered into various agreements that included but are not limited to a *Purchase Agreement*,[6] a Note and Loan Agreement ("*2006 Note*"),[7] and a Security Agreement (Negotiable Collateral) (herein "*Security Agreement*").[8]

32.     Pursuant to the Purchase Agreement, Mirabilis promised to pay Hendricks $2,847,196.39 (consisting of $2,672,662.88 in 2006 Note principal, $164,533.51 in 2006 Note interest at seven percent (7%) per annum, and $10,000 in attorney's fees [the

---

[6] Complaint Exhibit 7.

[7] Complaint Exhibit 8.

[8] Complaint Exhibit 9.

"*Purchase Agreement Price*"]) in exchange for right, title, and interest in various things, to-wit:

      a.    3rd Note as amended or modified by the 1st FA, 2nd FA, 3rd FA, 4th FA and 5th FA;

      b.    Certain Security Agreements dated January 16, 2002 executed by Amfinity Business Solutions, Inc. (n/k/a Paradyme) and Paradyme Brokers, all of which were given as security for the 3rd Note;

      c.    The Vanderburg 2002 Guaranty;

      d.    The Baiers 2002 Guaranty;

      e.    The Burcham 2002 Guaranty; and

      f.    An Assignment of Rights encompassing all of the Hendricks's rights in the pending litigation against William Leyton and Strategic in the United States District Court for the Central District of California. The foregoing items described in ¶¶ A-F, above, are herein the "*Loan Documents*".

33.    The Purchase Agreement further provided that, until the Purchase Agreement Price was paid in full, the Hendricks retain ownership of the Loan Documents as security.

34.    On or about February 16, 2006, Vanderburg and Baiers each executed Guaranties ("*Vanderburg 2006 Guaranty*"[9]; "*Baiers 2006 Guaranty*"[10]) guaranteeing the 2006 Note indebtedness (and all other debts of Mirabilis to the Hendricks) would be properly and timely paid in full to the Hendricks.

35.    Also on or about February 16, 2006, AmCap and the Hendricks entered into a Registration Rights Agreement[11] ("*Registration Agreement*") with Presidion.

36.    Mirabilis made its last 2006 Note payment to the Hendricks on or about January 9, 2007, leaving a balance due the Hendricks of $1,887,118.58, more or less, on the 2006 Note. No further payments have been made by Mirabilis.

---

[9] Complaint Exhibit 10.

[10] Complaint Exhibit 11.

[11] Complaint Exhibit 12.

37.     Plaintiffs have performed all obligations and conditions precedent required by all agreements referenced in this Complaint.

COUNT 1<br>MIRABILIS BREACH OF PURCHASE AGREEMENT

38.     The foregoing allegations are incorporated herein by reference.

39.     The Purchase Agreement requires Mirabilis to pay the Hendricks the Purchase Price in accord with 2006 Note terms.

40.     Purchase Agreement ¶ 11 states that in "an action between any parties hereto based upon this Agreement, the prevailing party(s) in the action shall be entitled to such party's reasonable attorneys' fees and costs incurred therein."

41.     On or about March 23, 2007 (and on other occasions), the Hendricks notified Mirabilis of its breach of the Purchase Agreement. Mirabilis has failed to correct its breach of the Purchase Agreement.

42.     Mirabilis breached the Purchase Agreement by, among other things, failing to timely and fully pay the Purchase Agreement Price to the Hendricks. Mirabilis' breach proximately caused the Hendricks the loss of sums described herein.

WHEREFORE, premises considered, the Hendricks pray that this Court will take jurisdiction of this cause and, upon final hearing, enter an order providing the following relief in favor of the Hendricks and against Mirabilis:

a.      A judgment for $1,887,118.58 in damages (said amount representing the unpaid Purchase Price as of January 9, 2007), plus interest thereon from January 9, 2007 through March 26, 2007 at the 2006 Note rate of seven percent (7%) and, thereafter, at the 2006 Note default interest rate of eighteen percent (18%);

b.      Reasonable attorney fees and expenses incurred in enforcing the Purchase Agreement;

c.      Recovery for various other losses which are not yet known to the Hendricks but which will be established at trial; and

d.      Such other relief as may be necessary to fairly adjudicate this dispute and justly determine the rights, duties and liabilities of the parties.

## COUNT 2
## MIRABILIS BREACH OF NOTE AND LOAN AGREEMENT

43.     The foregoing allegations are incorporated herein by reference.

44.     Pursuant to 2006 Note ¶ 1, Mirabilis agreed to pay the Hendricks $2,347,196.39 in 71 equal monthly principal payments of $30,175.87 beginning on April 1, 2006 and ending on March 1, 2012, except for one principal payment of $204,709.38 due on September 1, 2006.   Simultaneously with each principal payment, Mirabilis agreed to pay the Hendricks all interest then-accrued at a seven percent (7%) per annum rate (2006 Note ¶ 3).

45.     Mirabilis made its last 2006 Note payment to the Hendricks on or about January 9, 2007.  No further payments have been made by Mirabilis.

46.     Mirabilis breached its February 1, 2007 and subsequent 2006 Note payment obligations, was properly notified of said default on or about March 23, 2007 (and on other occasions), has not cured its default within three days of notice (2006 Note ¶ 13A), and is in default under the 2006 Note (the "*Note Default*").

47.     Pursuant to 2006 Note ¶ 4, interest on the unpaid balance of $1,887,118.58 accumulated at the rate of seven percent (7%) from January 9, 2007 through March 26, 2007 and, per 2006 Note ¶ 13A, interest on the unpaid balance (including accrued interest) accumulated at the 2006 Note default interest rate of eighteen percent (18%), or the highest rate of interest allowed under Florida law, whichever is less.

48.     Pursuant to 2006 Note ¶¶ 5 & 14, the Hendricks may declare all outstanding principal and interest immediately due and payable in the event of a note default.   The Hendricks have and hereby again declare all outstanding principal and interest immediately due and payable because of the 2006 Note default.

49.     Pursuant to 2006 Note ¶¶ 12D & 16, Mirabilis must reimburse the Hendricks for all Note collection costs (including but not limited to reasonable attorney's fees, court costs, discovery expenses, and investigation costs).

WHEREFORE, premises considered, the Hendricks pray that this Court will take jurisdiction of this cause and, upon final hearing, enter an order providing the following relief in favor of the Hendricks and against Mirabilis:

  a. A judgment for $1,887,118.58 in damages (said amount representing the unpaid Purchase Price as of January 9, 2007), plus interest thereon from January 9, 2007 through March 26, 2007 at the 2006 Note rate of seven percent (7%) and, thereafter, at the 2006 Note default interest rate of eighteen percent (18%);

  b. Reasonable attorney fees and expenses incurred in enforcing the Purchase Agreement;

  c. Recovery for various other losses which are not yet known to the Hendricks but which will be established at trial; and

  d. Such other relief as may be necessary to fairly adjudicate this dispute and justly determine the rights, duties and liabilities of the parties.

COUNT 3
MIRABILIS BREACH OF SECURITY AGREEMENT
(NEGOTIABLE COLLATERAL)

50. The foregoing allegations are incorporated herein by reference.

51 Security Agreement Collateral consists of various Loan Documents, including but not limited to, the Loan Documents (listed above), and all "additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock splits, stock rights, voting and preferential rights), products, and proceeds of or pertaining to the [foregoing described collateral], including, without limit, cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by [Mirabilis]," and all items listed on Security Agreement Schedule A, if any (the "*Collateral*").

52. Pursuant to the Security Agreement, Mirabilis granted the Hendricks a continuing security interest and lien in the Collateral to secure payment of the Loan Agreement debt.

53.     Mirabilis breached the Security Agreement by failing to timely and fully pay all indebtedness secured by the Security Agreement.

54.     On or about March 23, 2007, the Hendricks notified Mirabilis of its failure to comply with Security Agreement terms and conditions. Mirabilis has failed to correct its noncompliance with Security Agreement terms and conditions.

55.     Mirabilis is in default of its Security Agreement duties.

56.     Pursuant to Security Agreement ¶ 4.2, the Hendricks, by the filing of this Complaint, hereby (and again) declare that all of the indebtedness secured by the Security Agreement is immediately due and payable in full.

57.     Security Agreement ¶ 4.4 provides that the Hendricks may apply the proceeds of any sale or other disposition of Security Agreement collateral to payment of all reasonable attorney fees and legal expenses incurred by the Hendricks before any of such proceeds are applied to reduce the indebtedness secured by the Security Agreement.

WHEREFORE, premises considered, the Hendricks pray that this Court will take jurisdiction of this cause and, upon final hearing, enter an order providing the following relief in favor of the Hendricks and against Mirabilis:

a.     Declaring the Hendricks the lawful owners of all Collateral;

b.     Mandating that Mirabilis relinquish all right, title, interest and possession of all Collateral and deliver to the Hendricks all Collateral;

c.     Reasonable attorney fees and expenses incurred in enforcing the Security Agreement;

d.     Recovery for various other losses which are not yet known to the Hendricks but which will be established at trial; and

e.     Such other relief as may be necessary to fairly adjudicate this dispute and justly determine the rights, duties and liabilities of the parties.

## COUNT 4
## VANDERBURG BREACH OF GUARANTIES

58.     The foregoing allegations are incorporated herein by reference.

59.     Pursuant to the Vanderburg 2002 Guaranty, Vanderburg guaranteed to the Hendricks that the 3rd Note would be timely and fully paid, including all attorney fees and other costs incurred by the Hendricks in collecting sums due thereon.

60.     The 3rd Note required payment in full by April 15, 2004. PSI and the Guarantors breached the 3rd Note by failing to timely or fully pay all sums due.

61.     Pursuant to the Vanderburg 2006 Guaranty, Vanderburg guaranteed the Hendricks that Mirabilis would pay all sums due under the 2006 Note, including all attorney fees and other costs incurred by the Hendricks in collecting sums due thereon.

62.     Mirabilis breached its February 1, 2007 and all subsequent 2006 Note payment obligations, was properly notified of said default on or about March 23, 2007 (and on other occasions), has not cured its default within three days of notice (Note ¶ 13A), and is in default under the 2006 Note (the "*Note Default*").

63.     The unpaid balance on the notes is $1,887,118.58 in principal, plus interest thereon at the rate of seven percent (7%) from January 9, 2007 through March 26, 2007, plus interest thereon at the rate of eighteen percent (18%) on the March 26, 2007 unpaid balance (principal plus accumulated interest).

64.     As guarantor, Vanderburg owes the Hendricks all note balances, plus interest, plus collection costs.

65.     Vanderburg has not paid all note sums due and, hence, is in breach of the Vanderburg guarantees.

WHEREFORE, premises considered, the Hendricks pray that this Court will take jurisdiction of this cause and, upon final hearing, enter an order providing the following relief in favor of the Hendricks and against Vanderburg:

a.     A judgment for $1,887,118.58 in damages (said amount representing the note balances on January 9, 2007), plus interest from January 9, 2007 through March 26, 2007 at the agreed rate of seven percent (7%) and, thereafter, at the agreed default interest rate of eighteen percent (18%);

b.     Reasonable attorney fees and expenses incurred in enforcing and collecting on the notes;

c. Recovery for various other losses which are not yet known to the Hendricks but which will be established at trial; and

d. Such other relief as may be necessary to fairly adjudicate this dispute and justly

determine the rights, duties and liabilities of the parties.

## COUNT 5
### BAIERS BREACH OF GUARANTIES

66. The foregoing allegations are incorporated herein by reference.

67. Pursuant to the Baiers 2002 Guaranty, Baiers guaranteed to the Hendricks that the 3rd Note would be timely and fully paid, including all attorney fees and other costs incurred by the Hendricks in collecting sums due thereon.

68. The 3rd Note required payment in full by April 15, 2004. PSI and the Guarantors breached the 3rd Note by failing to timely or fully pay all sums due.

69. Pursuant to the Baiers 2006 Guaranty, Baiers guaranteed the Hendricks that Mirabilis would pay all sums due under the 2006 Note, including all attorney fees and other costs incurred by the Hendricks in collecting sums due thereon.

70. Mirabilis breached its February 1, 2007 and all subsequent 2006 Note payment obligations, was properly notified of said default on or about March 23, 2007 (and on other occasions), has not cured its default within three days of notice (Note ¶ 13A), and is in default under the 2006 Note (the "*Note Default*").

71. The unpaid balance on the notes is $1,887,118.58 in principal, plus interest thereon at the rate of seven percent (7%) from January 9, 2007 through March 26, 2007, plus interest thereon at the rate of eighteen percent (18%) on the March 26, 2007 unpaid balance (principal plus accumulated interest).

72. As guarantor, Baiers owes the Hendricks all note balances, plus interest, plus collection costs.

73. Baiers has not paid all note sums due and, hence, is in breach of the Baiers' guarantees.

Page 13

WHEREFORE, premises considered, the Hendricks pray that this Court will take jurisdiction of this cause and, upon final hearing, enter an order providing the following relief in favor of the Hendricks and against Baiers:

        a.     A judgment for $1,887,118.58 in damages (said amount representing the note balances on January 9, 2007), plus interest from January 9, 2007 through March 26, 2007 at the agreed rate of seven percent (7%) and, thereafter, at the agreed default interest rate of eighteen percent (18%);

        b.     Reasonable attorney fees and expenses incurred in enforcing and collecting on the notes;

        c.     Recovery for various other losses which are not yet known to the Hendricks but which will be established at trial; and

        d.     Such other relief as may be necessary to fairly adjudicate this dispute and justly determine the rights, duties and liabilities of the parties.

## COUNT 6
## BURCHAM BREACH OF GUARANTY

74.     The foregoing allegations are incorporated herein by reference.

75.     Pursuant to the Burcham 2002 Guaranty, Burcham guaranteed the 3rd Note to the Hendricks. More specifically, Burcham agreed to pay all unpaid sums due under the 3rd Note, plus interest at the rate of ten percent (10%) per annum, including all attorney fees and other costs incurred by the Hendricks in collecting sums due on thereon.

76.     PSI breached its obligations to pay the 3rd Note indebtedness and, after credit for amounts paid by Mirabilis, the unpaid 3rd Note balance is $1,887,118.58 in principal, plus interest thereon at the agreed rates.

77.     As 3rd Note guarantor, Burcham owes the Hendricks all 3rd Note balances, plus interest, plus collection costs.

78.     Burcham has not paid all 3rd Note sums due and, hence, is in breach of the Burcham 2002 Guaranty.

WHEREFORE, premises considered, the Hendricks pray that this Court will take jurisdiction of this cause and, upon final hearing, enter an order providing the following relief in favor of the Hendricks and against Burcham:

a.      A judgment for $1,887,118.58 in damages (said amount representing the Note balance on January 9, 2007), plus interest thereon at agreed rates;

b.      Reasonable attorney fees and expenses incurred in collecting on the 3rd Note;

c.      Recovery for various other losses which are not yet known to the Hendricks but which will be established at trial; and

d.      Such other relief as may be necessary to fairly adjudicate this dispute and justly determine the rights, duties and liabilities of the parties.

COUNT 7
PSI BREACH OF THIRD REPLACEMENT PROMISSORY NOTE

79.     The foregoing allegations are incorporated herein by reference.

80.     PSI breached its 3rd Note duties and obligations by failing to fully and timely pay all sums due thereunder.

81.     After credit for amounts paid by Mirabilis, the unpaid 3rd Note balance is $1,887,118.58 in principal, plus interest thereon.

82.     The Hendricks gave PSI proper written notice of PSI's default of its obligations under the 3rd Note and notice of the Hendricks' declaration that all sums owed thereby were due and payable.

83.     3rd Note ¶ 9 requires PSI to pay "all attorneys' fees and costs incurred by [the Hendricks] in collecting or attempting to collect this Note, by suit or otherwise."

WHEREFORE, premises considered, the Hendricks pray that this Court will take jurisdiction of this cause and, upon final hearing, enter an order providing the following relief in favor of the Hendricks and against PSI:

a.      A judgment for $1,887,118.58 in damages (said amount representing the 3rd Note balance on January 9, 2007), plus interest at agreed rates;

Page 15

b.       Reasonable attorney fees and expenses incurred in collecting on the 3rd Note;

c.       Recovery for various other losses which are not yet known to the Hendricks but which will be established at trial; and

d.       Such other relief as may be necessary to fairly adjudicate this dispute and justly determine the rights, duties and liabilities of the parties.

COUNT 8
PRESIDION BREACH OF REGISTRATION RIGHTS AGREEMENT

84.      The foregoing allegations are incorporated herein by reference.

85.      As of February 16, 2006 (and through the date of this Complaint), AmCap and the Hendricks owned 10,135,549 shares of Presidion Common Stock (the "*Stock*").

86.      Registration Agreement ¶ 2(a) requires that Presidion file a registration statement with the United States Securities and Exchange Commission ("*SEC*") registering the Stock for resale (the "*Registration Statement*").

87.      Registration Agreement ¶ 3(b) requires, among other things, that Presidion use such efforts as are necessary to make the Registration Statement effective no more than 120 days after the Registration Statement is filed with the SEC.

88.      Registration Agreement ¶ 3(r) requires Presidion to pay "all costs, fees and expenses in connection with the Registration statement filed".

89.      Registration Agreement ¶ 14 enables the prevailing party in this or any other litigation to recover "reasonable attorneys' fees and disbursements".

90      Presidion breached the Registration Agreement by, among other things, never filing the Registration Statement with the SEC.

91.      Plaintiffs have suffered damage proximately caused by Presidion's breach of the Registration Rights Agreement to-wit:

a.       Plaintiffs have been wrongfully denied access to and use of the Stock, which Plaintiffs could have traded on the open market;

b.       Plaintiffs have had to incur attorney fees and expenses in efforts to enforce the Registration Rights Agreement; and

Page 16

       c.      Plaintiffs have incurred other losses that will be more fully described at trial.

WHEREFORE, the Plaintiffs pray that this Court will take jurisdiction of this cause and, upon final hearing, enter an order providing the following relief in favor of the Plaintiffs and against Presidion:

      a.      Mandating that Presidion register the common shares owned by the Hendricks and AmCap in accordance with the Registration Rights Agreement;

      b.      Compensation for losses suffered in share price differential because the shares were not timely registered in accordance with the Registration Rights Agreement;

      c.      Reasonable attorney fees and expenses incurred in enforcing the Registration Right Agreement;

      d.      Recovery for various other losses which are not yet known to the Hendricks but which will be established at trial; and

      e.      Such other relief as may be necessary to fairly adjudicate this dispute and justly determine the rights, duties and liabilities of the parties.

BENCH TRIAL REQUESTED.

DATED this 16th day of April 2007.

BARNETT, BOLT, KIRKWOOD, LONG & MCBRIDE

By: _____

Charles A. Carlson, Esq.
Florida Bar # 716286
Post Office Box 3287
Tampa, Florida 33601-3287
813-253-2020
813-251-6711 – Facsimile
CCarlson@barnettbolt.com

Florida Counsel for Plaintiffs

And By:

Morris J. "Mo" Brooks, Jr.
(Pro Hac Vice Motion to be filed)
LEO & BROOKS, LLC
200 Randolph Ave., Suite 200
Huntsville, AL  35801
256-539-6000
256-539-6024 - Facsimile
mbrooks@leo-law.com

Trial Counsel for Plaintiffs.

BBKLDOCS-#326957-v1-HENDRICKS_Complaint.DOC